IKUTA, Circuit Judge,
joined by TALLMAN, and CALLAHAN, Circuit Judges, concurring:
I write separately to address a question raised by the majority: whether Miller-El v. Dretke (Miller-El II), 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), established a new procedural rule that a state court must use comparative juror analysis when adjudicating a Batson claim, such that a failure to do so results in a decision that is “contrary to, or involved an unreasonable application of, clearly established Federal law” under 28 U.S.C. § 2254(d)(1). Maj. Op. at 777. For the reasons explained below, Miller-El II could not and did not establish any such rule.
AEDPA provides that a federal court may not grant habeas relief to “a person in custody pursuant to the judgment of a State court ... with respect to any claim that was adjudicated on the merits in State court proceedings” unless that state-court adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). When evaluating a claim under § 2254(d)(1), the Supreme Court has instructed us to measure state-court decisions against rules that were clearly established by the Supreme Court’s precedents “as of the time the state court renders its decision.” Greene v. Fisher, — U.S. —, 132 S.Ct. 38, 44, 181 L.Ed.2d 336 (2011) (internal quotation marks and emphasis omitted). Because “ ‘clearly established Federal law’ in § 2254(d)(1) ‘refers to the holdings, as opposed to the dicta, of [the Supreme] Court’s decisions as of the time of the relevant state-court decision,”’ Carey v. Musladin, 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)), “it is not ‘an unreasonable application of clearly established Federal law* for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court,” Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (quoting § 2254(d)(1)); see also Wright v. Van Patten, 552 U.S. 120, 125-26, 128 S.Ct. 743, 169 L.Ed.2d 583 *783 (2008) (indicating that a Supreme Court rule is not “clearly established” unless it “squarely addresses” the issues in a case or gives a “clear answer to the question presented”).
Under this framework, a Supreme Court decision establishes a new procedural rule binding on state courts only if the decision (1) squarely establishes a specific legal rule, and (2) the rule was necessary to the disposition of the case, and therefore is not merely dictum. The Supreme Court’s decision in Miller-El II méets neither of these requirements.
In Miller-El II, a petitioner sought ha-beas relief, claiming that his Batson rights had been violated after the state court made a “determination of fact that the State’s race-neutral explanations were true.” 545 U.S. at 240, 125 S.Ct. 2317. The Supreme Court did not ask whether the staté court’s decision was contrary to or an unreasonable application of Batson under § 2254(d)(1). Rather, the Supreme Court analyzed the claim as a factual question under § 2254(d)(2): whether the state court’s application of Batson had involved an unreasonable determination of the facts. Id. Indeed, the Court stated that the prisoner could “obtain relief only by showing the Texas conclusion to be ‘an unreasonable determination of the facts in light of the evidence presented in the State court proceeding’” under § 2254(d)(2). Id. (emphasis added). After making “side-by-side comparisons” of venire members who had been struck and allowed .to serve, id. at 241, the Court determined that the state court had made an “unreasonable determination of the facts in light of the evidence presented” under 28 U.S.C. § 2254(d)(2), and therefore granted the writ. Id. at 266.
Because Miller-El II considered only whether the state court made an unreasonable factual determination, the Supreme Court did not discuss, let alone “squarely establish,” a new procedural rule that state courts must conduct comparative juror analysis when evaluating a Batson claim. At no point did Miller-El II suggest that the state court in that case violated the petitioner’s constitutional rights by failing to adhere to such a procedural rule. Accordingly, because Miller-El II does not provide a “clear answer,” Van Patten, 552 U.S. at 126, 128 S.Ct. 743, to the question whether a state court must conduct comparative juror analysis as part of its Bat-son inquiry, we ’cannot hold that a state court which fails to conduct comparative juror analysis violates clearly established Federal law, as determined by Miller-El II.
Even if a court concluded that Miller-El II somehow implicitly stands for the principle that state courts must always engage in comparative juror analysis when making a Batson inquiry, this principle would not be the Supreme Court’s holding in that case. While the Supreme Court issued its decision in Miller-El II in 2005, the state court rendered its underlying decision in 1992. Miller-El, 545 U.S. at 237, 125 S.Ct. 2317. Because “§ 2254(d)(1) requires federal courts ... to measure state-court decisions against [Supreme Court] precedents as of the time the state court renders its decision,” Greene, 132 S.Ct. at 44 (emphasis removed) (internal quotation marks omitted), the Supreme Court could not have granted the writ in Miller-El II on the ground the state court unreasonably applied any rule created by Miller-El II. There is no dispute that at the time of the underlying state court decision, the Supreme Court had not .enunciated a rule, implicit or otherwise, requiring comparative juror analysis in1 Batson inquiries. For this reason, the holding of Miller-El II was that the state court made an unreasonable factual finding, not that it violated *784 clearly established Supreme Court precedent. Accordingly, even if it were possible to read Miller-El II as implicitly enunciating a procedural rule that state courts must always engage in comparative juror analysis when conducting a Batson inquiry, such a rule would have been unnecessary to the Supreme Court’s disposition in that case, and therefore not binding on state courts in the AEDPA context. See Carey, 549 U.S. at 74,127 S.Ct. 649.
In recognition of these principles, we have held that “Miller-El II merely clarified] Batson and [did] not establish new rules of criminal procedure.” Boyd v. Newland, 467 F.3d 1139, 1146 (9th Cir.2006). Said otherwise, “[t]his court has already addressed and rejected [the] argument that a state court’s failure to conduct a comparative juror analysis was an unreasonable application of clearly established federal law under § 2254(d)(1).” Jamerson v. Runnels, 713 F.3d 1218, 1224 n. 1 (9th Cir.2013); see also Murray v. Schriro, 745 F.3d 984, 1005 (9th Cir.2014) (rejecting the habeas petitioner’s claim that “a comprehensive, formal comparative juror analysis” was a “per se legal requirement of the Equal Protection Clause of the Fourteenth Amendment,” because “Miller-El [II ] did not establish any such principle of law”).[1] This precedent is binding on any subsequent three-judge panel.
While Miller-El II did not establish a new constitutional rule for purposes of 28 U.S.C. § 2254(d)(1), it did suggest that a state court’s failure to examine comparative juror evidence could, under some circumstances, result in an “unreasonable determination of the facts” under 28 U.S.C. § 2254(d)(2). See, e.g., Jamerson, 713 F.3d at 1224-25 & n. 1 (citing Briggs v. Grounds, 682 F.3d 1165, 1170 (9th Cir.2012); Cook v. LaMarque, 593 F.3d 810, 816 (9th Cir.2010); and Ali v. Hickman, 584 F.3d 1174, 1180-81 (9th Cir.2009)). For this reason, we have suggested that “California courts may wish to revisit” their analysis of Batson claims in light of Miller-El II, even though Miller-El II did not create a new rule. Kesser v. Cambra, 465 F.3d 351, 360 n. 3 (9th Cir.2006) (en banc). While the failure to use comparative juror analysis would not render a state court’s decision an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1), a state appellate court could be objectively unreasonable in concluding that a trial court’s credibility determination was supported by substantial evidence, if it failed to use this or other ordinary techniques for reviewing the record as part of its Batson inquiry.
Because Miller-El II “only ... clarified the extant Batson three-step framework,” and did not “create a new rule of criminal procedure,” Boyd, 467 F.3d at 1146, the majority creates needless confusion by suggesting that there might be an open question as to whether Miller-El II established a rule that “[c]omparative juror analysis ... must be considered when reviewing claims of error at [Batson’s] third stage.” Maj. op. at 777 (quoting People v. Lenix, 44 Cal.4th 602, 80 Cal.Rptr.3d 98, *785 187 P.3d 946, 950, 961 (2008)). There is no such open question, because it is clear that Miller-El II established no such rule. I otherwise concur in the majority’s opinion.

. At least two of our sister circuits have also reached this conclusion. See, e.g., Golphin v. Branker, 519 F.3d 168, 186 (4th Cir.2008) ("Contrary to [the petitioner’s] belief, MillerEl II did not alter Batson claims in any way. Miller-El II itself was a case under AEDPA, so the Court, simply following clearly established federal law as AEDPA requires, could not have crafted a new legal standard.”); Murphy v. Dretke, 416 F.3d 427, 439 (5th Cir.2005) (noting that in Miller-El II, "[t]he Court did not announce any new elements or criteria for determining a Batson claim, but rather simply made a final factual and evidentiary determination of that particular petitioner’s Batson claim pursuant to the 'demanding but not insatiable' standard set forth in 28 U.S.C. § 2254(d)(2)” (quoting Miller-El II, 545 U.S. at 240, 125 S.Ct. 2317)).