J. S51043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JARMAINE Q. TRICE, | : | No. 2308 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, June 29, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0601181-1995

BEFORE:  DUBOW, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED NOVEMBER 05, 2018**

Jarmaine Q. Trice appeals from the June 29, 2017 order filed in the Court of Common Pleas of Philadelphia County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The facts, as set forth by a previous panel of this court, are as follows:

> [On December 11, 1993, appellant and co-defendants Gregory] Womack, [] Julius Jenkins, Atil Finney, and Naree Abdullah [] traveled from Germantown to North Philadelphia in Womack's 1979 Oldsmobile station wagon.  Demond Jackson, who asked for a ride, also accompanied them.  Womack parked the car around the corner from Lily's Market.  [Appellant], Jenkins, Finney, and Abdullah entered the market while Womack and Jackson stayed in the car.  Once inside the store, Jenkins pulled out a gun and announced a holdup.  Francisco Azcona, the store owner, was crouched behind a counter; Azcona's wife and sister-in-law

were standing behind the counter where the perpetrators could see them. When Jenkins went behind the counter and discovered Mr. Azcona, he fired a single shot, penetrating the victim's jaw and neck. The gunshot wound would cause[] Mr. Azcona to bleed to death. The four men returned to Womack's car, with [appellant] carrying a cash register. Womack drove the men to Abdullah's house, where the money from the cash register was divided among the cohorts.

[Appellant], Womack, and their co-defendants were arrested shortly after the robbery. The .45 caliber gun possessed by Jenkins at the time of his arrest was subsequently determined to be the same weapon used in Francisco Azcona's murder. Womack and Finney made inculpatory statements to the police admitting their participation in the robbery/murder.

The Commonwealth filed notice of its intent to try all of the co-defendants jointly. [Appellant] filed a motion for severance, which Womack joined. After argument was heard on the matter, the motion was denied. A jury trial was held before the Honorable John J. Poserina, Jr., and [appellant] and Womack were found guilty of second-degree murder, three counts of robbery, and criminal conspiracy.[1] [Appellant] and Womack were sentenced to life imprisonment or second degree murder, and were given consecutive prison terms of five to ten years for robbery.

*Commonwealth v. Trice*, No. 1829 PHL 1996, unpublished memorandum

at 1-3 (Pa.Super. filed December 16, 1997) (footnote omitted).

The PCRA court set forth the following procedural history:

[Appellant] appealed and on December 16, 1997, the Superior Court affirmed his judgment of sentence. On April 29, 1999, the Pennsylvania Supreme Court

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a), and 903, respectively.

denied allocatur. [***Commonwealth v. Trice***, 706 A.2d 1259 (Pa.Super. 1997), ***appeal dismissed as having been improvidently granted***, 727 A.2d 1113 (Pa. 1999).]

On August 3, 1999, [appellant] filed a [PCRA] petition, which was denied on August 22, 2000. On December 31, 2003, the Superior Court affirmed its dismissal. [***Commonwealth v. Trice***, 844 A.2d 1290 (Pa.Super. 2003), ***petition for allowance of appeal denied***, 857 A.2d 679 (Pa. 2004).] On September 22, 2004, [appellant] filed a second PCRA petition, which the Superior Court denied as untimely on February 17, 2005.[2]

On November 4, 2004, during the pendency of his second PCRA petition, [appellant] filed a writ for ***habeas corpus*** with the United States District Court, Eastern District Pennsylvania, which was denied on April 2, 2007. [***Greene***[3] ***v. Palakovich***, 482 F.Supp. 2d 624 (E.D. Pa. 2007).] [Appellant] appealed and on May 28, 2010, the United States District Court, Third Circuit affirmed the Eastern District's ruling. [***Greene v. Palakovich***, 606 F.3d 85 (3d Cir. Pa. 2010).] On November 8, 2011, after granting ***certiorari***, the Supreme Court of the United States affirmed the Eastern District's ruling. [***Greene v. Fisher***, 565 U.S. 34 (2011).]

On June 14, 2010, during the pendency of his ***habeas corpus*** proceedings, [appellant] filed a third ***pro se*** PCRA petition. It appears that, on December 1, 2014, [appellant] amended the petition.[Footnote 3]

> [Footnote 3] The instant petition does not address any of the issues raised in [appellant's] 2010 PCRA nor its 2014 supplement. Despite the pendency of

---

[2] A review of the docket entries reveals that the trial court dismissed the appeal as untimely.

[3] Appellant was known as Eric Greene for this litigation.

the 2010 petition, this Court properly treats the instant serial filing as a separate petition. Because there is no PCRA pending before an appellate court at the time [appellant] filed the instant petition, this Court has jurisdiction to review it.

To the extent that [appellant's] 2010 Petition and 2014 supplement are raised before this Court, they are denied. This Court cannot address the issues raised in [appellant's] 2010 petition, as copies of it no longer exist. In his 2014 supplement, [appellant] raised an unlawful sentence claim under **Alleyne v. United States**, [570 U.S. 99 (2013)], claiming timeliness under the newly-recognized constitutional right exception to the PCRA time bar. Since **Alleyne** does not apply retroactively to cases on collateral review, the 2014 supplement is untimely, as his claim does not fall into any exception.

On February 12, 2017, [appellant], through counsel, filed the instant PCRA Petition. On March 7, 2017, the matter was assigned to this Court. On May 10, 2017, the Commonwealth filed its response. On May 25, 2017, upon independent review, this Court found [appellant's] claims meritless and issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On June 14, 2017, [appellant] filed his Objection to this Court's Notice of Intent to Dismiss, but raised no new issues.

PCRA court opinion, 6/29/17 at 1-2 (citations omitted).

On December 17, 2016, appellant's counsel received a letter from appellant's co-defendant, Gregory Womack ("Womack"), which claimed that an inmate in his prison block, Abdul Hardy ("Hardy"), had received a letter

that indicated that Demond Jackson ("Jackson") testified in both Hardy's homicide trial and in appellant's trial. Appellant claimed in the petition that the Commonwealth's failure to disclose that Jackson testified in Hardy's trial violated **Brady v. Maryland**, 373 U.S. 83 (1963), and that had this evidence been disclosed, it may have been used to impeach Jackson's testimony, to establish Jackson's motive to lie, and to establish his status as a police informant. The PCRA court dismissed the PCRA petition and issued its opinion on June 29, 2017. Appellant filed a notice of appeal on July 18, 2017. The PCRA court did not order appellant to file a concise statement of errors complained of on appeal.

Appellant raises the following issues for this court's review: "1. Did the Commonwealth violate due process of law of [sic] when it failed to disclose significant impeachment evidence to trial counsel? 2. Was the Petition timely submitted pursuant to two exceptions to the PCRA time bar?" (Appellant's brief at 1-2.)

In **Brady**, the Supreme Court of the United States held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. Thus, "a **Brady** violation only exists when the evidence is material to guilt or punishment, **i.e.**, when there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." ***Commonwealth v. Tedford***, 960 A.2d 1, 30 (Pa. 2008) (citation, internal quotation marks, and footnote omitted); ***see also Commonwealth v. Roane***, 142 A.3d 79, 89 (Pa.Super. 2016) (stating, when a ***Brady*** claim is advanced under the PCRA, an appellant can only obtain relief by establishing that the alleged violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." (citation and internal quotation marks omitted)).

In order to establish the existence of a ***Brady*** violation, a defendant must demonstrate that: "(1) evidence was suppressed by the prosecution; (2) the evidence, whether exculpatory or impeaching, was favorable to the defendant; and (3) prejudice resulted." ***Commonwealth v. Cousar***, 154 A.3d 287, 301 (Pa. 2017) (citation omitted).

> Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, [f]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Koehler***, 36 A.3d 121, 133 (Pa. 2012) (citations and internal quotation marks omitted).

Before addressing the question of whether there was a violation of ***Brady***, we will address the question of whether the PCRA court properly

dismissed the petition as untimely. Subsequent PCRA petitions beyond a

petitioner's first petition are subject to the following standard:

> A second or subsequent petition for post-conviction relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. *Commonwealth v. Allen*, 732 A.2d 582, 586 (Pa. 1999). A *prima facie* showing of entitlement to relief is made only by demonstrating either that the proceedings which resulted in conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or the defendant's innocence of the crimes for which he was charged. *Id.* at 586. Our standard of review for an order denying post-conviction relief is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Jermyn*, 709 A.2d 849, 856 (Pa. 1998).
>
> A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that judgment of sentence becomes final. 42 Pa.C.S.[A.] § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or the expiration of time for seeking the review." 42 Pa.C.S.[A.] § 9543(b)(3). PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. *Commonwealth v. Fahy*, 737 A.2d 214 (Pa. 1999). Accordingly, the "period for filing a PCRA petition can be extended only if the PCRA permits it to be extended, *i.e.*, by operation of one of the statutorily enumerated exceptions to the PCRA time-bar. *Id.* at 222.

*Commonwealth v. Ali*, 86 A.3d 173, 176-177 (Pa. 2014), *cert. denied*,

135 S.Ct. 707 (2014).

As noted above, a PCRA petitioner has one year from the date his or her judgment of sentence becomes final in which to file a PCRA petition. This court has held the following regarding when a judgment becomes final:

> The plain language of the PCRA provides that a judgment of sentence becomes final at the conclusion of direct review or when the time seeking direct review expires. *See* 42 Pa.C.S.A. § 9545(b)(3). In fixing the date upon which a judgment of sentence becomes final, the PCRA does not refer to the conclusion of collateral review or the time for appealing a collateral review determination. Thus, the plain language of the PCRA statute shows that a judgment of sentence becomes final immediately upon expiration of the time for seeking direct review, even if other collateral proceedings are still ongoing. As this result is not absurd or unreasonable, we may not look for further manifestations of legislative intent. *See Commonwealth v. Hall*, 80 A.3d 1204, 1211 (Pa. 2013) (internal quotation marks omitted) (We may "look beyond the plain language of the statute only when words are unclear or ambiguous, or the plain meaning would lead to a result that is absurd, impossible of execution, or unreasonable.").

*Commonwealth v. Callahan*, 101 A.3d 118, 122 (Pa.Super. 2014).

In the instant case, the trial court sentenced appellant on May 13, 1996. He appealed to this court, which affirmed on December 16, 1997. On April 29, 1999, the Supreme Court of Pennsylvania denied the petition. Appellant's sentence became final on July 28, 1999, when the 90-day period for petitioning for *certiorari* with the Supreme Court of the United States ended. *See* 42 Pa.C.S.A. § 9545(b)(3); *see also* U.S.Sup.Ct.R. 13.

Appellant filed the current PCRA petition on February 12, 2017, more than 16 years after the PCRA time-bar. ***See*** 42 Pa.C.S.A. § 9545(b)1).

As noted above, the PCRA does enumerate exceptions to the one-year time limit. A petitioner must plead and prove that he meets one of the following exceptions to the time requirement:

> (i)  The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)  The facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)  The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Section 9545 also mandates that any petition filed under these exceptions must be filed within 60 days of the date the claim could have been presented. ***Id.*** at § 9545(b)(2).

Here, appellant asserts that he meets two of the timeliness exceptions set forth in 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii). Appellant asserts that his untimely petition comes under the first or governmental interference exception because the Commonwealth failed to disclose the exculpatory impeachment evidence that demonstrated that Jackson had previously

cooperated with the Commonwealth. Appellant argues that the Commonwealth was obliged to disclose the information to trial counsel and that the failure to do so constituted governmental interference. Appellant also asserts that the information contained in the letters constitutes newly discovered facts that he could not have previously ascertained with due diligence, so the second exception applies as well.

> Although a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence. The newly-discovered evidence exception requires that the facts upon which the **Brady** claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence.

**Commonwealth v. Hawkins**, 953 A.2d 1248, 1253 (Pa. 2006) (citations omitted.)

With respect to the governmental interference exception, appellant asserts that he did not have the opportunity to raise an alleged violation of **Brady** until his counsel received the letter from Womack which included the letter from Attorney Sturm which indicated that a person named "Demond Jackson" had testified at the homicide trial of Abdul Hardy prior to testifying in the trial of Womack and appellant. The significance of this being that Jackson allegedly lied under oath about a prior court appearance as a witness. Appellant claims that the Commonwealth violated **Brady** because it

failed to disclose that Jackson had previously testified on behalf of the Commonwealth in another matter. Appellant asserts in his PCRA petition that the fact that a witness also testified in another case for the Commonwealth constitutes impeachment evidence that must be provided to the defense.

At trial, Jackson responded affirmatively when asked whether he had testified previously. (Notes of testimony, 3/4/96 at 56.) Jackson also testified that he had previously testified against someone and that he had not previously testified in a homicide trial. (*Id.* at 57.) Later, on cross-examination, Jackson testified that he testified "like two years ago," that he was a witness, and "[t]hey asked me two questions." (*Id.* at 85-86.)

Appellant must plead and prove that governmental interference prevented him from learning about the claimed ***Brady*** violation until now and that he could not have learned about it, if he exercised due diligence. Our supreme court has articulated that due diligence "does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort to obtain the information upon which a claim is based." ***Commonwealth v. Cox***, 146 A.3d 221, 230 (Pa. 2016) (citation and quotation marks omitted).

Appellant became aware at trial that Jackson had previously testified in a prior case. Appellant does not allege any interference on the part of any

government entity after the failure to disclose at trial. As the trial took place in 1996, appellant had ample time to investigate further Jackson's relationship to the police and his role as a witness in another case. The letter from Womack that included a letter from Attorney Sturm to Hardy did not appreciably change appellant's knowledge of the events at trial, except to inform him that the other trial in which Jackson testified was a homicide. The record does not support a determination that appellant could not raise this claim until now due to governmental interference.

Similarly, the record does not support the newly discovered facts exception to the timeliness requirements as appellant was aware in 1996 that Jackson testified as a witness in another trial. Because appellant knew about the basic facts in question, they were neither new nor recently known and do not come under the exception. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Further, appellant did not act with due diligence when he learned of the situation at trial in 1996. Appellant has not successfully pled or proved that he meets the exception to the timeliness requirements of the PCRA.

Order affirmed.

J. S51043/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/18